DOE d. JOHN MELVIN and MARGARET J. MELVIN, his wife
v. JACOB HALLOWAY, tenant in possession.

The probate of a will in the usual form before a Register cannot be collaterally questioned or enquired into in any other proceeding, but is conclusive until it is brought directly in review before the proper tribunal as provided for by the statute.

The signing of a will by a cross mark made by a testatrix to her name written upon it by another at her instance and request, is a sufficient signing of it by her under the statute ; and without proof that it was read to her, or that the contents of it were otherwise made known to her, although she could not read, or write, she will be presumed to know them at the time of signing it, unless the contrary appears.

If some of the devises in a will are void for uncertainty, or by reason of a devise of lands in perpetuity, it will not affect the admissibility of it in evidence in an action of ejectment against the devisee by an heir at law to recover the lands so devised.

Although the first rule in relation to the construction of a will is to ascertain and give effect to the intention of the author of it, if it is not inconsistent with the rules or principles of law applicable to such an instrument, yet the heirs at law cannot be disinherited by it, without express words, or a clear and certain intention apparent upon the face of it to give the lands by a good and valid devise to another.

When the secondary and subordinate provisions of a will are vague, confused and uncertain, and the same seems to be the case with the main devises in it, and the chief design and intention indicated in it unquestionably is that neither the devisees named in it, nor the heirs at law shall ever have the right or power to sell the lands devised, but that they shall always be rented out for the benefit of the devisees and their descendants, the rents and profits thereof to be equally divided between them forever, the devise will for these reasons be held to be inoperative and void.

ACTION of ejectment for the undivided eighth part of three several tracts of land comprising about three hundred and seventy acres in Baltimore Hundred. The claim of the plaintiffs was in right of Margaret J. Melvin, the wife, as one of the eight children and heirs at law of Esther Timmons, deceased, who died seized and possessed of the premises in fee, and whose title to the same at the time of her death was not in dispute between the parties to the action; but the plaintiffs claimed that she died intestate as to the fee thereof, whilst the defence was under the following instrument purporting to be her last will and testament and which had been formally admitted to probate and allowed as such, before the Register of Wills for Sussex County. "I Esther Timmons of Baltimore Hundred in Sussex County, considering the uncertainty of this mortal life and being of sound mind and memory, do make and publish this my last will and testament in manner and form following, that is to say: Item, I give and devise to my daughter Fanny Timmons all that messuage or tenement of land which is called the Little Savanah where Sarah Halloway now lives to have and to hold during her life-time, up to a certain road leading from the School House to Jones' Road, the above road that I have described I make my line between my two farms, and after the death of my daughter Fanny Timmons, I will that that farm shall come back to the home farm again. Item, I will that my home farm where I now live never to be sold, but after my death to be rented out and the rents to be equally divided between my six sons and daughters here named, Patty Davis, Elizabeth Davis, Nancy Bailey, Sarah Halloway, Isaac Timmons and Stephen Timmons, also after the death of my daughter Fanny Timmons I will that farm never to be sold, but rented out and the rents to be equally divided between my six sons and daughters above named, them and their heirs from generation to generation forever. Item, my will and desire is that my daughter Fanny will let my two daughters, Sarah Halloway and Elizabeth

Davis (widow) live with her during their life-time, and further I will that when any of my grand-children shall become heirs to the rents of my farm, that Hester H. Timmons, daughter of James H. Timmons and Hester Timmons, daughter of Lemuel Timmons, shall have an equal share with them their life-time, also I will the sum of fifty dollars to be paid by my administrators, to my daughter Rebecca Carey without interest after my honest debts are paid and if there is not enough of my personal property to pay it after my debts are paid, I will it to be paid out of the rents of my farm.	And further I will that my grand-son Dennard Davis carries on the farm for two years and has the piece of new ground according to the contract, also Jacob Halloway my grand-son is to have an interest in the new ground with Dennard, and further I will that my grand-son Dennard Davis has the use of my young horse for the farm for two years, then I give the horse to my son Stephen Timmons; and further I will a certain piece of cedar swamp lying and being in Baltimore Hundred aforesaid, never to be sold, but to be kept for the use of rails for the said above mentioned farms.	I will that the timber on my lands shall not be destroyed and only used for the support of the two farms. Item, and in case my daughter Margaret Melvin should live longer than her husband, I will that she shall come in after the death of her husband, for an equal share of the rents of my farm with the rest of my children as above mentioned." It also contained several legacies and the following residuary clause, " I will that the residue of my personal property not herein mentioned, to be appraised and sold to the best advantage and to be paid towards my honest debts and if my personal property does not pay my debts, I will the balance to be paid out of the rents of my farm."

*Layton*, for the plaintiffs, objected to the admissibility of the will in evidence, because it did not appear to have been duly proved before the Register, and was therefore
67

not her valid will and testament, as it then stood before the court. It was signed simply with her mark of the cross, and there was no proof before that officer, as appeared from his record of the probate of it, that it had ever been read over to her, or that she otherwise knew the contents of it, either before, or at the time of so signing it. The affidavits of the subscribing witnesses to it, were entirely silent on both of those material points, being simply in the usual form adopted in that office; and as she signed the instrument, not by subscribing her own name to it, but by making her mark merely, as before stated, the presumption both in fact and in law was that she was unable either to write or read it. In the case of Dolby's will, *Smith and Wife v. Dolby*, 4 *Harr*. 350, the court held that where the signing was by a mark simply, and there was evidence to show that the testator knew the contents of it, it was sufficient; and the same principle was ruled in the case of Col. Davis' will, since decided in New Castle County, *Davis et al., v. Rogers*, 1 *Houst*. 44. Futhermore, as a will, the instrument was void for uncertainty, and because it attempted to establish a perpetuity in the devise of the lands as disposed of in it.

*Cullen*, for the defendant : If there was any ground for such an objection as that first taken, it should have been by an appeal from the decision of the Register allowing and establishing the will, for it pertains to the sufficiency of the probate before him. Upon a caveat, or a petition of review, or the trial of an issue of *devisavit vel non*, such an objection might be made, and if sustained, it would be a sufficient ground for setting aside the instrument, as a last will and testament. But the decision of the Register decreeing the instrument to be proved and established before him as the last will and testament of the testatrix, under the provisions of the statute, was final and conclusive, until it was appealed from as provided for in it, and could not be collaterally inquired into, or

called in question either there, or before any other tribunal. That principle of law had been well settled by the uniform current of the decisions in this State, as well as everywhere else where the question had arisen. 2 *Harr.* 501. 4 *Harr.* 83. 2 *Greenl. Ev.* sec. 672. 16 *Mass.* 441. 1 *Pick.* 535.

*By the Court:* In the case of *Pennel's Lessee v. Weyant et al.,* 2 *Harr.* 503, the court recognized expressly that the probate of a will before one of our Registers, was a decree or sentence by a judicial officer, having not only competent, but exclusive original jurisdiction for that general purpose, and that it was conclusive whenever it came collaterally in question in any other proceeding; and as to the case of *Smith and Wife v. Dolby,* 4 *Harr.* 350, it was upon the trial of an issue of *devisavit vel non* before the court awarded by the Register to determine by the verdict of a jury here, whether it was or not the last will and testament which it purported to be, and in which the question presented here was the same as the question originally presented before him, and which had been remitted by him to this tribunal for its decision. But even in that case, the court expressly decided that the signing of a will by a testator's simply making his mark to his name written upon it by another person by his direction or request, was a good and sufficient signing by him, and that it was not necessary in such a case, to prove that the will had been read over to him, but he would be presumed to know the contents of it, unless the contrary appeared. The other two objections raised by the counsel for the plaintiffs, related to the legal construction and effect of the devises in question, and not to the formal execution or validity of the instrument as a last will and testament simply, and were therefore matters properly to be considered and passed upon hereafter, but could not affect the admissibility of the instrument as evidence merely. The first objection was therefore overruled, and the will was then read in evidence.

*Layton*, for the plaintiffs : The plaintiffs were entitled to recover in the action in right of the wife, Margaret Melvin, who was one of the children and heirs at law of Esther Timmons, the testatrix, because the devise of the lands in the will to her six sons and daughters named in it, under whom the defendant claimed title, as well as possession, and the right to exclude the plaintiffs from any participation in them, was inoperative and void in law as against the plaintiffs who claim by inheritance in such right, the one undivided ninth part of them in co-parcenary with her other eight children and heirs at law. Because the fee simple in the farm mentioned was devised to no one, or in other words, it was not devised at all ;' for although the direction in the will was that the farm should be rented out and should never be sold, yet she devised it to no one to rent out, unless it could be shown on the other side that the devise of the rents of the farm constituted a devise of the farm itself by implication to the six children mentioned in it. But such could not be the case, because there was in that item of the will when carefully examined and considered, no specific devise, and no devise at all, of the rents even to any one. Where there was a specific devise of the rents and profits of real estate to any one, he would admit that it would constitute a devise of the land itself by implication to such person. But not otherwise ; and such was not the case with the devise in question. The devise of the farm and the tract of cedar swamp mentioned were also inoperative and void for another reason, and that was because it was an intentional and attempted devise of them in perpetuity and for the express purpose of rendering them inalienable forever by her descendants. They were never to be sold, but the farm was to be rented out, without designating by whom, or creating any trust, or appointing any executor, or person to do it, and the rents thereof were to be equally divided between the six devisees named and their heirs from generation to generation forever, whilst according to the strict and proper import of

the terms employed in the will, the piece of cedar swamp embraced in it, was not only never to be sold, but was not even to be rented out from generation to generation forever, but was to be kept for the use of rails for the said farms forever. Such a limitation of lands in *perpetuum* was clearly and unquestionably void, because lands cannot be devised in such a manner as to render them altogether inalienable for a longer period than a life, or lives in being and twenty-one years and nine months thereafter. 6 *Cruise Dig.* 188, 466, 477. 1 *Jarm. on Wills* 253, 254, 255. But as before intimated, the devise was furthermore void, because there was no one named, or appointed, or provided for in the will who was to rent out the farms, receive or collect the rents and divide them equally among such devisees and their descendants forever; and also because the subsequent provisions of the will in regard to the rents, rendered it exceedingly vague and uncertain when the devisees were to take and in what proportions they were to take them, for there was no rule prescribed and no direction given in the will as to how or in what proportions or on what basis they were to be shared and divided after the death of the devisees named, among their descendants to the latest posterity, except that they were forever to be divided wherever they might be, equally between them.

*Cullen*, for the defendant: There being no dispute as to the facts in the case, the only matter to be considered or discussed was the question of law involved in it; and the first principle of law which applied to it was, that the intention of the testator is to control the construction of the will, if not incompatible with the technical rules of law which have been established in regard to it. The main object of the testatrix in making the devise in question was manifest; it was that the possession of the lands devised and the enjoyment of the rents and profits of them, should pass to the devisees mentioned, and their heirs forever. But a devise of the rents and profits of

land is equivalent to a devise of the land itself to such devisee. 2 *Jarm. on Wills* 533. 6 *Cruise, sec.* 67. *Cro. Jac.* 104. 9 *Mass.* 355. A devise of the income of land is in effect a devise of the land itself. *Doe d. Golden v. Lakeland et al.*, 22 *E. C. L. R.* 19. In that case the devise was very similar to the present. It was a devise of the rents and profits of the land in question, without saying who should rent it, to be equally divided between the three daughters of the testator, and it was held by the court that in such a devise by virtue of the terms used in it, they took the land itself. 4 *Kents Com.* 533, 536. And so in regard to personal property, a gift of the proceeds of a fund, is a gift of the fund itself.

As to the objection that the devise was void because it created, or attempted to create a perpetuity in the lands devised, he only had to say that a condition that is repugnant to the estate or title devised in them, is itself, absolutely null and void. If therefore a feoffment be made upon condition that the feoffee shall not have the rents and profits of the premises, the condition itself is void, and the feoffee will take the estate free and discharged from such condition. So in a devise of land to a person on condition that he shall not aliene it, the condition is repugnant and void, and the devisee will take the land discharged from the condition, *Doe d. Mitcheson v. Carter*, 8 *T. R.* 60. 1 *Jarm. on Wills* 810. In such case the condition is nugatory and the estate given is absolute. If, therefore, the devisees in this case took by virtue of the devise an estate in fee in the farms mentioned and referred to, then the words " never to be sold " contained in it, were repugnant to that estate, and as such were absolutely nugatory and void, and they took an estate in fee in them free and discharged from it, 4 *Kents Com.* 131, 132. 18 *Pick.* 455. 21 *Pick.* 42. And as to the objection that they were to be rented out, without saying by whom, it was met and answered by the decision before cited by him from 22 *E. C. L. R.* 19, in which it was held that the gift of the rents and profits of the land, without saying

who should have the renting of them, to be equally divided between the three daughters of the testator, was equivalent to a devise of the land itself to them, and that they consequently took the land itself, as well as the rents and profits, and, of course, had the renting of it.

*McFee*, on the same side, would not protract the argument of the case ; but as it was apparent that the counsel for the plaintiffs would at length fall back on the third tract, or piece of cypress swamp devised in the will and which was directed by the testatrix not to be sold, but to be kept for the supply of rails for the use of the farms before devised by her, without, however, any words of limitation expressed in the devise of that particular tract, he would simply say in regard to that point, that wherever there were words of reference between several distinct clauses or devises in a will, as there were in the present case, the words of limitation embraced in one clause, or devise, will be construed to have relation to all the clauses and devises so connected by such words of reference.  9 *East* 267.   But independent of that rule of testamentary construction, the plaintiffs were not entitled to recover any part of even that tract, for the late act of Assembly which was passed prior to the date of the will and the death of the testatrix, provides that a general devise of land without words of limitation shall confer a fee simple estate, unless a contrary intention appears from the will, and as this was such a devise, it carried the fee without any words of limitation to the devisees of the other two tracts, or farms for the use and benefit of which it was to be kept and never sold.

*Layton*, in reply : It was only when the devise of the rents was a specific devise of them, and not when it was in such terms as were employed in the will in question, that it was held to be equivalent to a devise of the land itself, and not one of the cases which had been cited would sustain such a construction with reference to the

devise then under consideration, for it differs essentially from them all, inasmuch, as in it there was no devise of the land itself to any one nor any devise of the rents thereof to any one. The direction of the will simply was that the lands should never be sold and the rents should be equally divided between the children named and their heirs forever. There was consequently no direct or specific devise of either to any one, but it was merely a direction given with regard to both, which clearly showed in the first place that the testatrix did not intend to devise the lands in question to any one, and in the second place that her design and intention solely was to render them forever inalienable and out of the rents arising to establish a fund in perpetuity for the benefit of her preferred children and their descendants forever. As to the devise in regard to the piece of cedar swamp referred to, the objection he had raised was even stronger, for it was neither a devise of the land itself, nor of the rents or proceeds of it to any one expressly or specifically, but only showed still more clearly that it also should remain inalienable forever, and in perpetuity for the benefit of the same parties.

*The Court, Gilpin, C. J.,* charged the jury: The first rule in regard to the construction of a will is to ascertain the meaning and intention of the testator of it, and to give effect to that meaning and intention, if it is not inconsistent with the rules and principles of law applicable to it; but it is also another rule of law, which is not to be overlooked in this connection, that the heirs at law are not to be disinherited, or debarred of their right to claim his lands by operation of law, or by descent and inheritance, as it is usually termed, without express words, or a clear and certain intent apparent upon the face of the will. For in order to make such a devise of real estate as will disinherit an heir at law, or deprive him of his right to inherit it, independent of the will, such an intention must appear, or be clearly indicated in it, as is

sufficient to satisfy the mind and conscience of the court
in pronouncing it such.    If it is barely problematical, or
is doubtful, or uncertain, the rule of law must have its
course and control the disposition of the estate, notwith-
standing the provisions of the will. *Bowes v. Blackett*,
*Cowp*. 240.    Because it is a rule of universal application
in the construction of wills that whenever there is an ir-
reconcilable uncertainty or repugnancy in the disposi-
tions made by a testator of his real estate, the title of
the heirs at law shall be preferred to all others; because
where a court cannot find words in a will, which either
expressly, or by necessary implication, denote the testa-
tor's intention beyond the possibility of a doubt, the rules
of law directing descents, which are certain, must pre-
vail and can never be superseded by an uncertain devise.
*Pow. on Dev.* 21 *Law Libr.* 204.    Many of the secondary
or subordinate provisions contained in the will before
them, were vague, confused and uncertain in their mean-
ing and the court had not been able when taken together
to ascertain and determine with entire certainty or satis-
faction, their exact meaning, or the precise object, or in-
tention of the testatrix in making them.    And the same
remark may be made in regard to what appears to be the
main purposes of the divises in question.    But taking
the whole will and considering all its provisions together,
the main design and intention which she had in view un-
questionably was that neither the devisees named, nor
her heirs at law should ever have the right or power to
sell or alienate the lands devised, but that the same should
be forever rented out for the benefit of the devisees men-
tioned and their descendants, the rents thereof to be
equally divided forever between them.    The will, how-
ever, contains in terms no express devise of the lands to
them, or to any one else, or of the rents and profits even,
and there was consequently no devise of either to them,
or to any other person, unless it could be shown that
what is said by way of direction in regard to the division
of the rents between the devisees named and their de-

scendants, constitute a devise in law of the lands themselves to them, by implication or legal construction, but which we think has not been done ; and we are therefore of the opinion, for both of these reasons, that the devises in question are inoperative and void as against the claim of the plaintiffs who are seeking to recover the one undivided eighth part of the lands and premises referred to in right of the wife, Margaret Melvin, as one of the children and heirs at law of the testatrix, and that they are consequently entitled to recover.

The plaintiff had a verdict.